IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

MDL No. 2326

-------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Sharon Kay Pelkey v. Boston Scientific Corp.*                 No. 2:13-cv-07084

**MEMORANDUM OPINION AND ORDER**
(*Defendant's Motion for Partial Summary Judgment*)

Pending before the court is the defendant's Motion for Partial Summary Judgment on Plaintiff Sharon Kay Pelkey's Punitive Damages Claim ("Motion") [Docket 43]. For the reasons set forth below, the Motion is **DENIED**.

**I.**     **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re Bos. Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Pelkey's case was selected as a Wave 2 case by BSC.

Ms. Pelkey was surgically implanted with the Advantage Fit System (the "Advantage Fit") to treat her SUI on February 23, 2010. (*See* BSC's Mot. for Partial Summ. J. & Mem. in Supp. ("Mem. in Supp.") [Docket 43], at 8). She received her surgery at a hospital in Kilmarnock, Virginia. (*Id.*). Dr. James Hamilton was the implanting surgeon. (*Id.*). Ms. Pelkey claims that as a result of implantation of the Advantage Fit, she has experienced multiple complications. (*See* Pl. Fact Sheet [Docket 43-1], at 6–7). She brings the following claims against BSC: negligence; strict liability for design defect, manufacturing defect, and failure to warn; breaches of express and implied warranties; and punitive damages. (Short Form Compl. [Docket 1], at 4). In the instant motion, BSC moves for summary judgment on the grounds that Ms. Pelkey's claim for punitive damages is "without evidentiary or legal support." (Mem. in Supp. [Docket 43], at 1).

## II. Legal Standards

### A. Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381

2

(E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592. 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

**B. Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as Ms. Pelkey did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Bos. Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Pelkey received the Advantage Fit implantation surgery in Virginia. Thus, the choice-of-law principles of Virginia guide this court's choice-of-law analysis.

**III. Analysis**

The question before the court is whether Ms. Pelkey has produced enough evidence to create a genuine dispute of material fact as to whether BSC engaged in culpable conduct that

4

meets the punitive damages standard. To resolve the issue, I must first determine which state's law applies. As discussed above, Virginia choice-of-law principles apply generally to this case. Virginia adheres to the standard of *lex loci delicti*, or place of the wrong, for resolving conflicts of laws arising in multistate tort actions. *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993); *see also McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979) (explicitly rejecting other choice of law doctrines). The "place of the wrong" is defined as "the place where the last event necessary to make an act liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). In a personal injury case, the tort cause of action accrues the day the injury is sustained. Va. Code § 8.01-230 (1984).

    BSC argues that the law of Massachusetts—the place where the alleged misconduct occurred—should apply instead of the law of Virginia. (*See* Mem. in Supp. [Docket 43], at 13–14). BSC maintains that the focus of the punitive damages inquiry in this case is corporate conduct and that such alleged conduct took place, if at all, in Massachusetts where BSC's principal place of business is located and corporate decisions are centered. (*Id.* at 14). BSC also notes that the Advantage Fit was designed and labeled in Massachusetts. (*Id.*). Accordingly, BSC takes the position that Massachusetts law applies to the plaintiff's punitive damages claim. (*Id.*). BSC points to this court's ruling in *In re Ethicon*, where I held that the focus of the punitive damages inquiry was Ethicon's corporate conduct, and because that conduct allegedly occurred in New Jersey, New Jersey law applied. *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-cv-4301, 2014 WL 186869, at *10 (S.D. W. Va. Jan. 15, 2014), *rev'd on other grounds*, No. 2:12-cv-4301, 2014 WL 457551 (S.D. W. Va. Feb. 3, 2014). BSC also points to other product liability cases where courts have applied an alternative state's punitive damages law based on where the corporate conduct occurred. *See Aguirre Cruz v. Ford Motor Co.*, 435 F.

5

Supp. 2d 701, 706 (W.D. Tenn. 2006) (applying Michigan law for punitive damages where the corporate decisions, design of the product, and principal place of business all occurred in Michigan); *Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d 757, 760 (D. Md. 2012) (applying Tennessee's "most significant relationship" approach to hold that New Jersey punitive damages law—where the conduct occurred—applied); *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 422 (N.D. Tex. 2009) (applying Texas law for punitive damages where injury occurred in Illinois but the defendants' corporate decisions were made in Texas).

BSC's analysis is flawed. The cases it cites are inapposite because they all use the "most significant relationship" test. In *In re Ethicon, Inc.*, this court applied Texas choice-of-law rules. 2014 WL 186869, at *2–3. Under Texas law, courts apply the "most significant relationship" test as enunciated by the Restatement (Second) of Conflicts (the "Restatement") to each substantive issue. *Id.* at *9. *Tobin* also applied the Restatement approach under Texas law. 637 F. Supp. 2d at 412. Similarly, *Aguirre Cruz* and *Zimmerman* applied Tennessee's choice-of-law rules, where Tennessee also employs the Restatement's "most significant relationship" approach. *See Aguirre Cruz*, 435 F. Supp. 2d at 704; *Zimmerman*, 889 F. Supp. 2d at 760. BSC cites to no authority for a Virginia court—state or federal—construing *lex loci delicti* as the place where the defendant engaged in wrongful conduct. Instead, Virginia's choice-of-law principles provide that the place of the wrong, for purposes of the *lex loci delicti* rule, is "the place where the last event necessary to make an act liable for an alleged tort takes place." *Quillen*, 789 F.2d at 1044. For causes of action based on personal injury, the last event necessary to establish liability is injury. *See* Va. Code § 8.01-230. Ms. Pelkey's alleged injuries were sustained and treated in Virginia, not Massachusetts. (*See* Pl. Fact Sheet, [Docket 43-1], at 7–8 (showing that Virginia-based doctors treated each of plaintiff's conditions). Consequently, I **FIND** that the laws of Virginia apply to

the plaintiff's punitive damages claim.

I now consider the substantive law. In Virginia, the primary purpose of punitive damages is "to warn others and punish the wrongdoer if he has acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations." *Wallen v. Allen*, 343 S.E.2d 73, 78 (Va. 1986). As such, "[a] claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003). The Virginia Supreme Court defines "willful" and "wanton" negligence as acting consciously in disregard of another person's rights, or acting with reckless indifference to the consequences. *Id.* The defendant must be aware, "from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* The essential element of a punitive damages claim, then, is the defendant's actual or constructive knowledge of the danger involved. *Boward v. Leftwich*, 89 S.E.2d 32, 35 (Va. 1955).

BSC argues that the plaintiff presents no evidence of "malice" or "criminal indifference." (Mem. in Supp. [Docket 43], at 16). To support its position, BSC points to its submission of the Advantage Fit to the FDA prior to marketing the product, and the fact that the FDA cleared the product "with full knowledge of its potential benefits and risks." (*Id.*). BSC also notes that "[m]esh systems like the Advantage Fit remain the 'worldwide standard of care' for treatment like that undergone by Plaintiff." (*Id.*). In conclusion, BSC states that "[p]laintiff cannot support an inference that [BSC's] actions warrant punitive damages," and therefore, BSC is entitled to judgment as a matter of law on the issue of punitive damages.

In response, the plaintiff argues that BSC was aware that the polypropylene used to construct the Advantage Fit was not intended to be implanted in the human body. (Pl.'s Resp. in

Opp'n to BSC's Mot. for Partial Summ. J. ("Resp.") [Docket 60], at 12). The Advantage Fit is constructed using a polypropylene resin supplied by Chevron Phillips Chemical Company, LP. (MSDS [Docket 60-5], at 1). As evidence of BSC's knowledge, the plaintiff points to a material safety data sheet ("MSDS") authored by Chevron Phillips, which included the following warning:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

(*Id.*). Despite this warning, BSC used Chevron Phillips polypropylene in the Advantage Fit.

Additionally, the plaintiff argues that BSC knew it needed to conduct long-term safety studies of the polypropylene material in the Advantage Fit. (Resp. [Docket 60], at 12). The plaintiff points to the written agreement between BSC and Chevron Phillips (the "Agreement") as evidence of BSC's knowledge. (*Id.*). The Agreement cautioned BSC to make its own determination of the safety and suitability of the polypropylene material in BSC's products. The agreement stated:

> BEFORE USING ANY PSPC POLYPROPYLENE PRODUCT, BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE SAFETY AND SUITABILITY OF THE PSPC POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Chevron Agreement [Docket 60-7], at 1–2). Despite the MSDS warning and the admonition from BSC's polypropylene supplier to conduct its own tests, an internal BSC document indicates that BSC sponsored no clinical studies on the Advantage Fit before selling the device to the public. (Clinical Risk/Benefit Analysis [Docket 60-1]). Furthermore, BSC never warned through

its Directions for Use that the Advantage Fit was made of a component that was not safe for permanent implantation in the human body. (*See* Advantage Fit DFU [Docket 60-26]).

In light of the MSDS warning and BSC's failure to conduct clinical testing, a reasonable jury could find that BSC acted in conscious disregard of Ms. Pelkey's rights, or acted with reckless indifference to the consequences. *See Woods*, 574 S.E.2d at 268. A reasonable jury could also find that BSC knew that the Advantage Fit "probably would cause injury to another," and that BSC was aware of the danger involved with placing the Advantage Fit into the stream of commerce. *See id.*; *Boward*, 89 S.E.2d 32 at 35. In sum, the plaintiff has presented sufficient evidence to overcome summary judgment on the plaintiff's punitive damages claim. I **FIND** that there is a genuine dispute of material fact as to whether BSC's actions with respect to the Advantage Fit were willful and wanton under Virginia law and warrant an award of punitive damages. Accordingly, BSC's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim is **DENIED**.

## IV. Conclusion

For the reasons stated above, BSC's Motion [Docket 43] is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 13, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

9